******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

FLORENCE THIVIERGE *v.* RICHARD WITHAM ET AL.
(AC 35860)

DiPentima, C. J., and Bear and Peters, Js.*

*Argued March 10—officially released June 10, 2014*

(Appeal from Superior Court, judicial district of
Middlesex, Morgan, J.)

*Nickola J. Cunha*, for the appellant (plaintiff).

*Claudia A. Baio*, for the appellees (defendant Gail Petras et al.).

*Opinion*

PETERS, J. The principal issue in this civil appeal is whether the doctrine of governmental immunity shields a municipal animal control officer from personal liability for allegedly having failed to enforce a restraining order issued pursuant to General Statutes § 22-358 (c).[1] Holding that, under the circumstances of this case, the officer was entitled to such immunity, the trial court rendered a judgment in her favor. We agree and affirm the judgment of the court.

On June 12, 2012, the plaintiff, Florence Thivierge, filed a six count complaint against the defendants, Richard Witham, Gail Petras, and the city of Middletown (city).[2] The complaint alleged that the plaintiff had sustained injuries during a dog bite incident caused by the negligence of the defendants. In response, the defendants filed a motion for summary judgment. The court granted the defendants' motion on the ground that the doctrine of governmental immunity barred the claims against them. The plaintiff has appealed.

The court's memorandum of decision describes the undisputed factual background of the plaintiff's appeal. Witham owned a male German Shepard named Thor, which he kept at his home in Middletown. In 2007, Petras, a municipal animal control officer for the city, investigated two biting incidents involving the dog and, pursuant to § 22-358 (c), issued a restraint order against Witham. The restraint order required that the dog: (1) be led on a secure leash to a pen when on Witham's property; (2) be on a secure leash and under the control of a responsible adult at all times when not on Witham's property; (3) not be tied, tethered or loose at any time; (4) be licensed; and (5) be neutered within thirty days.

On or about June 15, 2010, the plaintiff visited Witham at his home. At the time, his dog was tied to a cable in the yard. When the plaintiff petted the dog, it attacked and bit her.

In the present action, the plaintiff alleged that Petras was personally responsible for the dog attack and the plaintiff's resulting injuries because she negligently had failed to enforce the obligations of the restraint order that she previously had issued against Witham. In addition, the plaintiff sought damages from the city on theories of vicarious liability pursuant to General Statutes § 52-557n,[3] indemnification pursuant to General Statutes § 7-465,[4] and negligence for the hiring and supervision of Petras.

The defendants' motion for summary judgment as to all counts asserted against them maintained that the doctrine of governmental immunity barred the plaintiff's claims. In opposition, the plaintiff argued that the doctrine of governmental immunity does not apply to her case because the defendants' conduct was ministerial rather than discretionary or, alternatively, that the

claims were actionable under the identifiable person-imminent harm exception to the doctrine.

After hearing oral argument, the court granted summary judgment as to all counts against the defendants. The court concluded that the doctrine of governmental immunity was applicable because (1) Petras' conduct as an animal control officer and the city's conduct in appointing and supervising her were discretionary rather than ministerial acts, and (2) the identifiable person-imminent harm exception did not apply. On appeal, the plaintiff challenges the court's conclusion that the defendants are protected by governmental immunity on these two grounds. We affirm the judgment of the court.

We begin with the relevant standard of review. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact. . . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) *Silberstein* v. *54 Hillcrest Park Associates, LLC*, 135 Conn. App. 262, 266, 41 A.3d 1147 (2012). "The issue of governmental immunity is simply a question of the existence of a duty of care, and this court has approved the practice of deciding the issue of governmental immunity as a matter of law." (Internal quotation marks omitted.) Id., 268.

To understand the context of the plaintiff's specific claims, it is instructive briefly to outline the doctrine of governmental immunity in Connecticut. At common law, a municipality generally was immune from liability for its tortious acts, but its agents and employees faced the same personal tort liability as private individuals. *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 165, 544 A.2d 1185 (1988). In the early twentieth century, our courts extended qualified immunity to municipal employees as well. Id.,166. Eventually, the personal liability of public officers acting in the scope of their office came to depend on whether the acts or omissions in question were discretionary or ministerial in nature. Id., 166–68. In 1986, our legislature enacted § 52-557n, which allows a municipality to be held liable for the negligent acts of its employees under certain circumstances. *Conway* v. *Wilton*, 238 Conn. 653, 672, 680 A.2d 242 (1996) ("§ 52-557n, enacted as part of tort reform in 1986 . . . was intended, in a general sense, both to codify and to limit municipal liability" [citation omitted; internal quotation marks omitted]). Under the relevant statutory provisions, a municipality's liability in negligence for its employees' acts hinges on the same

ministerial-discretionary dichotomy. General Statutes § 52-557n (a) (1) (A) and (2) (B); see *Grignano* v. *Milford*, 106 Conn. App. 648, 659, 943 A.2d 507 (2008).

Our Supreme Court recently has explained the public policy rationale for the doctrine of governmental immunity as it applies today. "Affording immunity to municipal officers performing discretionary acts serves the policy goal of avoiding expansive exposure to liability, which would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment in the performance of ministerial acts." (Citation omitted; internal quotation marks omitted.) *Edgerton* v. *Clinton*, 311 Conn. 217, 229–30, 86 A.3d 437 (2014).

I

In this appeal, the plaintiff maintains that Petras' failure to enforce the restraint order was actionable because her conduct was ministerial, rather than discretionary, in nature. We disagree.

"[W]hile a municipality is generally liable for the ministerial acts of its agents, § 52-557n (a) (2) (B) explicitly shields a municipality from liability for damages to person or property caused by the negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Silberstein* v. *54 Hillcrest Park Associates, LLC*, supra, 135 Conn. App. 267–68.

"Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint . . . [that] [t]he determination of whether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to . . . § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint.

. . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Internal quotation marks omitted.) Id., 270.

Petras issued the restraint order to Witham pursuant to § 22-358, which authorizes animal control officers to investigate dog bites and to take appropriate remedial action, including the issuance of a restraint order. General Statutes § 22-358 (c) ("any municipal animal control officer *may* make any order concerning the restraint or disposal of any biting dog . . . as the . . . officer deems necessary" [emphasis added]).

The plaintiff concedes that Petras' initial issuance of the restraint order to Witham was a discretionary act. She argues nonetheless that once Petras issued the order, she had a ministerial obligation to enforce it— namely, to ensure that the dog be neutered within 30 days, be licensed, and be kept in a pen with a secure leash rather than being tied or tethered. We disagree.

Although General Statutes § 22-331[5] provides for the appointment of a municipal animal control officer "to administer and enforce the laws relating to dogs," it does not provide any directive on how those laws are to be enforced. Similarly, § 22-358 itself does not require an officer to ensure that a restraint order be enforced in any prescribed manner or at all. Although subsection (c) of § 22-358 vests officers with the authority to seize a dog in the event that its owner fails to comply with a restraint order, it provides only that the officer may seize the dog, leaving the officer's response within his or her discretion. See *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 252 Conn. 115, 122, 742 A.2d 1257 (2000) ("The word 'may,' unless the context in which it is employed requires otherwise, ordinarily does not connote a command. Rather, the word generally imports permissive conduct and the conferral of discretion.").

Furthermore, as noted by the court, the plaintiff has failed to identify any other authority, such as a city ordinance or policy, imposing a duty on an animal control officer to enforce a restraint order in a prescribed manner. In the absence of any such authority compelling Petras to take specific actions to enforce the order, her conduct cannot be said to have been ministerial in nature.[6] See *Violano* v. *Fernandez*, 280 Conn. 310, 323, 907 A.2d 1188 (2006) (plaintiffs failed to allege that acts or omissions complained of were ministerial in nature because they did not allege that defendant was required by any city charter provision, ordinance, regulation, rule, policy, or any other directive to act in any prescribed manner).

The plaintiff also contends that the city's appointment

and supervision of Petras constitutes the exercise of a ministerial function because § 22-331 mandates the appointment of a municipal animal control officer. The undisputed facts of the case demonstrate that the city has adhered to the statute by appointing Petras. The alleged negligence on the part of the city pertains to the manner in which it chose to comply with the mandate and, therefore, implicates the city's discretion. In the absence of any authority prescribing the specific manner in which a municipality must appoint and supervise an animal control officer, the city's conduct in doing so was not ministerial.

Accordingly, on the facts of this case, both Petras' acts or omissions in the enforcement of the restraint order and the city's acts or omissions in appointing and supervising Petras were discretionary in nature. It follows that the court properly held that Petras and the city are immune from liability to the plaintiff.

II

Next, the plaintiff claims that, even if Petras' conduct was discretionary, she is liable pursuant to the identifiable person-imminent harm exception to governmental immunity. Specifically, the plaintiff argues that this exception applies to the alleged facts because (1) Petras knew or should have known that her failure to enforce the restraint order allowed a dangerous condition to persist, (2) the geographical area of the condition was limited to Witham's property, and (3) Petras' failure to act subjected the plaintiff, a specific identifiable individual, to the imminent harm of a dog attack when she entered the property. We are not persuaded.

Our Supreme Court has recognized three exceptions to discretionary act immunity. *Doe* v. *Petersen*, 279 Conn. 607, 615, 903 A.2d 191 (2006). "Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force." (Internal quotation marks omitted.) Id. One of these exceptions, the so-called identifiable person-imminent harm exception,[7] applies when "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) Id., 616.

The identifiable person-imminent harm exception has three elements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. Id. "[T]he criteria of identifiable person and imminent harm must be evaluated with reference to each other. An allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm. Likewise, the alleged imminent harm

must be imminent in terms of its impact on a specific identifiable person." (Internal quotation marks omitted.) *Cotto* v. *Board of Education*, 294 Conn. 265, 276, 984 A.2d 58 (2009). The exception is applicable "only in the clearest cases." Id.

In light of these governing principles, we conclude that the plaintiff does not qualify as an identifiable person under the exception. Although the identifiable person contemplated by the exception need not be a specific individual, the plaintiff must fall within a "narrowly defined identified [class] of foreseeable victims." (Internal quotation marks omitted.) *Tryon* v. *North Branford*, 58 Conn. App. 702, 710, 755 A.2d 317 (2000). The application of the exception to an identifiable class of victims has been exclusively reserved for schoolchildren attending public schools during school hours. See *Grady* v. *Somers*, 294 Conn. 324, 352–53, 984 A.2d 684 (2009). Outside of the public school context, the only Connecticut case we have identified wherein a specific plaintiff has been held potentially to be an identifiable person for purposes of the exception involved a discrete group of men involved in a brawl in a bar parking lot. See *Sestito* v. *Groton*, 178 Conn. 520, 522–23, 423 A.2d 165 (1979);[8] see also *Grady* v. *Somers*, supra, 294 Conn. 353 (discussing restrictive application of exception).

In the present case, any number of potential victims could have come into contact with the dog following Petras' issuance of the restraint order. The exception cannot be construed so broadly as to apply to any person stepping foot onto Witham's property while the dog was present. See *Cotto* v. *Board of Education*, supra, 294 Conn. 279 ("[i]f the plaintiff was identifiable as a potential victim of a specific imminent harm, then so was every participant and supervisor in the Latino Youth program who used the bathroom").

We are likewise persuaded that the injuries suffered by the plaintiff do not qualify as imminent harm under the exception. "For [a] harm to be deemed imminent, the potential for harm must be sufficiently immediate." Id., 276. Here, Petras issued the restraint order on June 21, 2007, and the dog bite incident occurred nearly three years later, on June 15, 2010. The type of attack that caused the injuries suffered by the plaintiff "could have occurred at any future time or not at all." *Evon* v. *Andrews*, 211 Conn. 501, 508, 559 A.2d 1131 (1989) (rejecting application of exception to claims of negligent fire inspection by city officials). Accordingly, we conclude that the plaintiff in this case cannot avail herself of the identifiable person-imminent harm exception to discretionary act immunity.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] General Statutes § 22-358 (c) provides in relevant part: "[A]ny municipal animal control officer . . . may make any order concerning the restraint or disposal of any biting dog . . . as the . . . officer deems necessary."

[2] Witham is not a party to this appeal. Accordingly, we refer in this opinion to Petras and the city as the defendants.

[3] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . ."

[4] General Statutes § 7-465 provides in relevant part: "(a) Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded . . . for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . ."

[5] General Statutes § 22-331 provides in relevant part: "(a) In each municipality of the state having a population of more than twenty-five thousand . . . the chief of police, or such other appointing authority as the charter may designate, shall, appoint a full-time municipal animal control officer and such assistants as are deemed necessary . . . to administer and enforce the laws relating to dogs or other domestic animals. . . ."

[6] The plaintiff relies on *Soderlund* v. *Merrigan*, 110 Conn. App. 389, 955 A.2d 107 (2008), for the proposition that the method of performing an act can be discretionary even though the duty to perform it is ministerial. In *Soderlund*, the plaintiff brought a negligence action against a police officer and the city of Meriden for failing to remove from the statewide computer system an arrest warrant that had been vacated by the trial court. Id., 392. On appeal, this court determined that although the order did not specify how the arrest warrant was to be vacated, it was nonetheless a ministerial function as it imposed a mandatory duty that involved no exercise of judgment or discretion. Id., 397. The plaintiff's reliance is misguided, as the present case is distinguishable in that Petras, unlike the police officer in *Soderlund*, was not compelled by any authority to act.

[7] Our Supreme Court determined in *Grady* v. *Somers*, 294 Conn. 324, 332, 984 A.2d 684 (2009), that the identifiable person-imminent harm exception applies in actions brought pursuant to § 52-557n.

[8] The plaintiff argues that *Sestito* v. *Groton*, supra, 178 Conn. 520 is analogous to the present case. Our Supreme Court recently has explained that *Sestito* was decided before the current three-pronged identifiable person-imminent harm exception was adopted and its holding is limited to its facts, which are readily distinguishable from those alleged by the plaintiff. See *Edgerton* v. *Clinton*, supra, 311 Conn. 240.